Appellant, Linda Elrod, appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, terminating her parental rights and granting permanent custody of her son, Christopher Clinton ("Christopher"), to Butler County Children Services Board ("BCCSB"). We affirm.
In February 1994, Christopher, born on November 10, 1991, was physically abused by Mark Bowser, appellant's live-in boyfriend. On February 4, 1994, Christopher was adjudicated an abused child. Christopher was returned to appellant and a "no contact" order was issued against Bowser. However, appellant allowed Bowser back into the home. As a result, Christopher was placed in foster care on July 11, 1994. On November 10, 1994, the juvenile court granted appellant temporary custody of Christopher. In late August 1995, it was discovered that appellant neglected to seek medical treatment for Cody Bowser, Christopher's half-brother. Thereupon, BCCSB filed a motion with the juvenile court to remove the children claiming that the children were neglected, abused, and not living in a safe environment. On September 1, 1995, the juvenile court granted BCCSB's motion to remove the children from appellant's custody and placed them in foster care.[1]
On September 5, 1995, BCCSB filed a complaint alleging Christopher was dependent and the trial court issued anex parte order granting temporary custody of Christopher to BCCSB. On January 16, 1997, BCCSB moved to terminate appellant's parental rights and obtain permanent custody of Christopher. A hearing was held on December 15 and 16, 1997 and February 10, 1998.[2] In an April 7, 1998 entry, the juvenile court granted permanent custody of Christopher to BCCSB and terminated all parental rights. Appellant filed a timely notice of appeal and presents one assignment of error for our review:
 THE TRIAL COURT'S DECISION TO GRANT BCCSB PERMANENT CUSTODY IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.
We initially note that natural parents have a constitutionally protected liberty interest in the care and custody of their children. See Santosky v. Kramer (1982),455 U.S. 745, 102 S.Ct. 1388. A motion by the state to terminate parental rights "seeks not merely to infringe that fundamental liberty interest, but to end it." Id. at 759,102 S.Ct. at 1397. In order to meet the constitutional demands of due process, the court must find by clear and convincing evidence that the best interest of the child warrants a grant of permanent custody, and that the child cannot be placed with either parent within a reasonable time. Id. at 769,102 S.Ct. at 1403; In Egbert Children (1994), 99 Ohio App.3d 492, 495. Clear and convincing evidence is established when there is evidence to support a firm belief or conviction that a particular fact has been established or proved. Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
In determining the best interests of the child, R.C.2151.414-(D) provides that the juvenile court must consider all relevant factors including:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child.
(2) The wishes of the child * * *
(3) The custodial history of the child.
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
In the present case, appellant does not have a family support system, and missed considerable amounts of scheduled visits with Christopher. In 1996, appellant missed seven out of thirty-four visits. In 1997, appellant missed fourteen out of thirty-two visits. When appellant did visit Christopher, he appeared to be physically distant from appellant. Michelle DeCresce, a Parachute[3] volunteer case worker, observed that there was not a close bond between mother and son and that appellant rarely engaged Christopher to participate in activities. Interaction between Christopher and his father, Clinton, has been minimal. Christopher had little memory of his father and had to be shown a picture of Clinton to refresh his memory. Clinton consistently forgot about the scheduled visitations, poorly interacted with Christopher, played video games while Christopher wandered off on his own, and failed to provide appropriate activities for Christopher. Further, Clinton has expressed his uncertainty and inability of becoming a parent to Christopher.
Christopher's wishes have been expressed through his therapist, Tami Langen. Langen informed the juvenile court that Christopher has asked to stay with his foster family.
Initially, Christopher was placed in foster care on July 11, 1994. Four months later Christopher was returned to appellant's custody. When appellant failed to seek medical treatment for Cody, Christopher was returned to foster care. Within the last three years, Christopher has been in four different foster homes. Christopher remains in foster care and has had sporadic visits with appellant and Clinton.
DeCresce has spent considerable time with Christopher since he was placed in foster care. In her testimony and reports, she found that Christopher has behavioral problems that require constant attention. In order to meet Christopher's needs, his caretaker needs to be consistent and reliable. DeCresce has observed that while in foster care Christopher was "always in a good mood, he was enthusiastic, he just seemed very even-tempered, very serene." Documentation shows that within the last ten months of foster care, Christopher's progress with adapting and coping has improved as a result of being in a stable, constant, and reliable environment.
Christopher's parents have both exhibited an inability to keep a job for any substantial length of time. Since 1995, appellant has lived in numerous places, stayed with friends for a short period of time, rented a room, and at one time was living out of her automobile. Appellant has not been able to prove an ability to provide a safe and secure home for Christopher.
After considering the child's best interests, the juvenile court is required to assess whether Christopher can be placed with appellant within a reasonable time. In making its determination, the juvenile court is guided by a variety of factors. The relevant part of R.C. 2151.414(E) states:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.
* * *
 (12) Any other factor the court considers relevant.
If one of the factors apply, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent."Id.
Appellant was offered services to improve her basic living and parenting skills. However, appellant failed to consistently attend those services and failed to apply any of the lessons taught to her. This lack of effort demonstrates that she "has failed continuously and repeatedly to substantially remedy the conditions" that gave rise to the removal of Christopher from her custody. A psychological evaluation revealed that appellant has an inability to deal with her anger, and is rebellious against authority. This is demonstrated through appellant's lack of commitment in attending parenting skills workshops and other services ordered by the juvenile court. Further, Dr. Lee, a psychologist, testified that appellant tends to enter into abusive relationships, which leaves Dr. Lee concerned about Christopher's welfare. In his evaluation of appellant, Dr. Lee stated that appellant's defiant nature makes it difficult to work with her on improving living and parenting skills. Appellant's lack of commitment to find a safe home and consistent employment demonstrates appellant's inability to provide the needed stability for Christopher. Further, Dr. Lee opined that if Christopher was placed with appellant, Christopher might be exposed to substance abuse and domestic violence.
The foregoing supports the juvenile court's decision that appellant does not have the ability to parent her child within a reasonable time. Therefore, we find that it was in the best interest of Christopher to grant permanent custody to BCCSB. We further conclude that the juvenile court's decision to grant permanent custody to BCCSB was supported by clear and convincing evidence. Accordingly, appellant's assignment of error is not well-taken and the judgment of the juvenile court is affirmed.
YOUNG, P.J., and KOEHLER, J., concur.
[1] The subject of this appeal relates only to Christopher.
[2] Both appellant and Christopher Clinton, Sr. ("Clinton"), Christopher's father, were notified but failed to appear at the December hearing. A new hearing was scheduled for February 10, 1998. Appellant appeared, but Clinton did not. The juvenile court terminated Clinton's parental rights. Clinton has not appealed this decision.
[3] Parachute is a Butler County children services agency.